# Exhibit A

# COMMONWEALTH OF MASSACHUSETTS

**SUFFOLK, SS.**

Superior Court Department
Civil Action No. _____

16-0188H

| | |
|---|---|
| RYAN COSTELLO, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| WHOLE FOODS MARKET GROUP, | ) |
| INC. and WANDA HERNANDEZ, | ) |
| | ) |
| Defendants. | ) |

2016 JAN 21 AM 11:39
MICHAEL ...
CLERK ...

## COMPLAINT AND JURY DEMAND

## I.    INTRODUCTION

1.    The Massachusetts Legislature has declared that it is "against public policy for any employer to employ any person in an occupation in this commonwealth at an oppressive and unreasonable wage." M.G.L. c. 151, § 1. The Legislature has defined "[a]n oppressive and unreasonable wage" as "a wage which is both less than the fair and reasonable value of the services rendered and less than sufficient to meet the minimum cost of living necessary for health." M.G.L. c. 151, § 2. The Legislature has also declared that employees must be paid all "wages earned" by them. M.G.L. c. 149, § 148.

2.    Plaintiff Ryan Costello engaged in protected activity under the Massachusetts Minimum Fair Wage Law and the Massachusetts Wage Act, when he (with other co-workers) approached management to request a wage increase due to the

1

increased job responsibilities that they had taken on.  Defendants terminated Costello's employment because of that protected activity in violation of the anti-retaliation provisions of the Minimum Fair Wage Law and the Wage Act.  Accordingly, pursuant to  M.G.L. c. 151, § 19 and M.G.L. c. 149, § 148A, Costello seeks lost wages, emotional distress damages, as well as treble damages, interest, costs and attorneys' fees, reinstatement to his position, and all other relief to which he is entitled.

3.    Defendants' termination of Costello's employment also constitutes breach of contract and breach of the covenant of good faith and fair dealing.  Whole Foods Market repeatedly emphasizes to its employees, most notably in its General Information Guide, that it prides itself on creating a positive working environment and that it encourages employees to communicate openly with one another and with management about working conditions.  Nevertheless, Defendants terminated Costello's employment for precisely what it claims to encourage—communicating with co-workers and management about working conditions and wage issues.  This constitutes a breach of contract and breach of the covenant of good faith and fair dealing, in violation of the Massachusetts common law.  For these violations of the Massachusetts common law, Costello seeks lost wages, emotional distress damages, reinstatement to his position, and all other relief to which he is entitled.

## II.    PARTIES

4.    Plaintiff Ryan Costello is an adult resident of Boston, Massachusetts.  He was employed by Defendants from approximately June 2014 to October 2015 at the Whole Foods Market located at 413 Centre Street in Jamaica Plain, Massachusetts.

2

5.      Defendant Whole Foods Market Group, Inc. is a corporation that owns and operates the Whole Foods Market in Jamaica Plain, as well as hundreds of other Whole Foods Markets around the country.

6.      Defendant Wanda Hernandez is the general manager of the Whole Foods Market at which Costello worked.  She is responsible for overseeing employees and setting employees' pay rates.  She had involvement in and responsibility for the decision to terminate Costello's employment.

III.    **FACTS**

7.      Ryan Costello began working at the Whole Foods Market in Jamaica Plain as a part-time employee in June 2014 at a rate of $10 per hour.

8.      He was eventually made a full-time employee, and his hourly rate ultimately increased to $13.54 per hour.

9.      Costello worked as a Team Member in the Prepared Foods department of the market.  He and the other employees in his department were responsible for cooking and preparing food and attending to various food bars in the market.

10.     In September 2015, Defendants installed a new burrito bar at the market. Instead of staffing an additional employee to be responsible for the burrito bar, as was the usual practice, managers instructed Costello and the other employees in his department to take on these responsibilities in addition to their own job responsibilities.

11.     The managers told the employees that there would be negative consequences if they did not perform these additional job responsibilities.

3

12.     At approximately the same time, the workload of all of the Prepared Foods employees was further increased by the installation of a new pizza station and a new hot food station.  In addition to all of their usual job responsibilities and the added work from the burrito bar, the employees had to prepare many more pizzas, fold pizza boxes continuously throughout their shifts, and cook and package hot food.

13.     All of these additional responsibilities required extensive additional set-up work at the beginning of each shift and additional closing work at the end of each shift, as well as added work throughout the shift.

14.     Costello and his co-workers took on the additional job responsibilities, as demanded by Defendants, but they did not receive any pay increase to reflect the additional work.

15.     Because they believed their hourly wages to be oppressive and unreasonable and because they were not being paid all wages earned by them, given the significant extra work that they were doing without any additional compensation, Costello and several of his co-workers prepared and signed a petition to be presented to their managers asking for a $1 per hour wage increase for all employees in their department.

16.     Costello drafted the petition, which stated, "we the undersigned team members of the Jamaica Plain Prepared Foods team request a $1/hour raise for our entire team."  The petition went on to note the new responsibilities, increased workload, and extra hours that they had all been contributing without any additional compensation.

4

17.    Costello signed the petition first, and fifteen of his co-workers signed the petition as well. All in all, 16 of the 19 employees in the department signed the petition.

18.    Costello and several of his co-workers presented the petition to their manager at a shift change in October 2015. When they presented the petition, Costello explained to their managers that the employees felt that the amount of work that they had been asked to do was too much and was unfair.

19.    A few days after the petition was originally presented to management, the petition had been placed on a bulletin board in the kitchen. Other employees also noticed the petition and began discussing it. Shortly thereafter they signed the petition, and it was again provided to the management with the new signatures added.

20.    On October 23, 2015, five days after the petition was submitted, Costello was called into a meeting with Wanda Hernandez and Linda Shear, Regional Executive Coordinator – Team Member Services for Whole Foods.

21.    Shear and Hernandez informed Costello that he was being investigated for statements that he purportedly made while soliciting signatures for the petition. They claimed that another employee had approached them about the concern of solicitation of signatures while on the clock.

22.    Defendants terminated Costello's employment on October 30, 2015. They claimed that he was being terminated for "lying during an investigation," and they cited and attached page 58 of the Whole Foods General Information Guide ("GIG") as the basis for his termination.

5

23.     Costello did not lie during the investigation, and the document terminating his employment contains several misstatements regarding what he said during the investigation.

24.     Moreover, page 58 of the GIG does not support Costello's termination. The cited section, entitled "Team Member Investigation," relates to investigations of "conduct/behavior or other relevant circumstances, including reasonable suspicion, [which] raise legitimate questions concerning work performance, reliability, honesty, trustworthiness, or potential threat to the safety of co-workers or others."

25.     Costello was not investigated for any of the conduct set forth on page 58 of the GIG but instead was purportedly investigated for soliciting signatures while on the clock.

26.     Defendants in fact terminated Costello for asserting his rights under the Minimum Fair Wage Law and the Wage Act, specifically for challenging Defendants' payment of an oppressive and unreasonable wage and failure to pay Costello and his co-workers the wages earned by them.

27.     Moreover, Costello's employment was terminated for him doing the very thing that Whole Foods purports to encourage and promises that its employees will have the right to do.

28.     Specifically, in its GIG, Whole Foods sets forth the company's policies and procedures.

29.     In addition to emphasizing its commitment to "creating a positive, productive and enjoyable work environment" for its employees, Whole Foods

repeatedly states in the GIG that employees are encouraged to meet and communicate with one another about workplace issues.

30.    For example, the GIG states that "[t]he most basic and important level of decision-making is with Team Members" and that everyone should "work[] together to formulate and carry out team goals."

31.    In fact, Whole Foods promises in the GIG that "[w]e want to give our Team Members the power and freedom to create the best working environment they possibly can."

32.    Whole Foods promises to "support our Team Members' right to access information that impacts their jobs," "recognize everyone's right to be listened to and heard," and "encourage open communication, free exchange of ideas, spontaneous and honest dialogue and an atmosphere of trust."

33.    Whole Foods encourages "networking" among employees, because "[o]ne of the best ways to grow as a company and as individuals is to come together and exchange information and share ideas."

34.    Whole Foods has established an "Open Door Communications Policy." The company emphasizes to employees: "You have the right to speak with anyone in the company about your concerns."

35.    The GIG asserts that employees "deserve" "[a]n 'open door' to communicate in person with anyone in the company," "[e]ncouragement to make suggestions, and to receive replies to suggestions made," and "[o]penness to discuss one's own compensation with leadership."

36.    In talking with co-workers and managers about working conditions and wages and in discussing the petition about those issues, Costello was doing precisely what Whole Foods promises its employees the right to do—free exchange of ideas, networking, speaking with others in the company about concerns, etc.

37.    Defendants' actions in investigating Costello and terminating his employment go against its own promises in the GIG.

38.    Instead of encouraging employees to discuss workplace issues and exchange ideas, Defendants' actions communicated to Costello and others that they cannot discuss work issues or attempt to present collective concerns regarding their treatment and compensation to management.

39.    Defendants sent a clear message to Costello and his fellow employees that they would be punished if they attempted to discuss workplace concerns and/or propose solutions to those concerns.

40.    In fact, during the investigation, managers instructed Costello's co-workers not to have any contact with him, in violation of Whole Foods' own policies in the GIG.

41.    In every way, Defendants' actions were in direct contravention of the GIG and the promises made by Defendants therein.

42.    Defendants' termination of Costello's employment was without good cause and was in bad faith.

43.    Defendants terminated Costello's employment with the purpose of depriving him of benefits to which he is entitled, specifically continued employment in

a workplace that allows employees to discuss working conditions and wage issues with one another and with management, as Whole Foods has promised in its GIG.

## IV.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

44.    Plaintiff Ryan Costello has filed his statutory claims with the Office of the Attorney General and has received a right-to-sue letter in order to proceed on these claims in court.

## COUNT I
### RETALIATION – MINIMUM FAIR WAGE LAW

Defendants' conduct in terminating Plaintiff Ryan Costello's employment after he raised complaints about their oppressive and unreasonable wage payment practices, as set forth above, violates M.G.L. c. 151, § 19.  This claim is brought pursuant to M.G.L. c. 149, § 150.

## COUNT I
### RETALIATION –WAGE ACT

Defendants' conduct in terminating Plaintiff Ryan Costello's employment after he raised complaints about their failure to pay Costello and other employees all wages earned by them, as set forth above, violates M.G.L. c. 149, § 148A.  This claim is brought pursuant to M.G.L. c. 149, § 150.

## COUNT III
### BREACH OF CONTRACT

Defendants' conduct in terminating Plaintiff Ryan Costello's employment constitutes breach of contract in violation of the Massachusetts common law.

9

## COUNT IV
### BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

Defendants' conduct in terminating Plaintiff Ryan Costello's employment constitutes breach of the covenant of good faith and fair dealing in violation of the Massachusetts common law.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all of his claims.

WHEREFORE, Plaintiff requests that this Court enter the following relief:

1. An award of lost wages;

2. An award of emotional distress damages;

3. Statutory trebling of damages;

4. Attorneys' fees and costs;

5. Reinstatement in his position;

6. Damages for breach of contract and breach of the covenant of good faith and fair dealing;

7. Pre- and post-judgment interest; and

8. Any other relief to which Costello may be entitled.

Respectfully submitted,

RYAN COSTELLO,

By his attorneys,

Hillary Schwab, BBO #666029
Rachel J. Smit, BBO #688294
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
(617) 607-3260
Fax:  (617) 488-2261
www.fairworklaw.com
Email:  hillary@fairworklaw.com,
rachel@fairworklaw.com

Dated:        January 21, 2016