UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RYAN COSTELLO, | ) </br> ) </br> ) </br> ) Civil Action No. 1:16-cv-10673-GAO </br> ) </br> ) </br> ) </br> ) </br> ) </br> ) |
| Plaintiff, | |
| v. | |
| WHOLE FOODS MARKET GROUP, INC. and WANDA HERNANDEZ, | |
| Defendants. | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**[1]

Defendants' motion to dismiss should be denied. First, the NLRA does not preempt Plaintiff's claims. The scope of such preemption is exceedingly narrow, and the Supreme Court has repeatedly upheld states' exercise of their own police powers in the context of regulation of the employment relationship. To that end, courts routinely hold that there is no NLRA preemption of employees' claims relating to retaliatory discharge and/or wage issues. As in those cases and in keeping with the Supreme

---

[1] As set forth in Plaintiffs' Motion to Remand to State Court (ECF Docket No. 18) and in Plaintiff's Emergency Motion to Defer Further Briefing and Decision on Defendants' Motion to Dismiss Until After a Ruling on Plaintiff's Motion to Remand (ECF Docket No. 19), Plaintiff maintains that this Court does not have jurisdiction over this case because neither of the two required elements for diversity jurisdiction is satisfied. As explained in more detail in those motions, the Court must address this threshold jurisdiction issue by ruling on Plaintiff's Motion to Remand to State Court prior to considering the issues raised in Defendants' motion to dismiss (and should not consider the motion to dismiss at all if it rules that it lacks jurisdiction).

Court's pronouncements about the limited scope of NLRA preemption, this Court should hold that Plaintiff's claims are not preempted.

Defendants' motion must fail on the merits as well. Taking the pleadings in the complaint as true, as the Court must on a motion to dismiss, Plaintiff has alleged that he reasonably believed that Defendants' actions were violating the wage laws and that he was terminated for speaking out about those perceived wage violations. Plaintiff has also sufficiently pleaded a claim against Wanda Hernandez, the general manager of the store in which he worked and one of the decisionmakers relating to his termination. Finally, Plaintiff's common law claims must survive, as he has sufficiently pleaded those claims.

Accordingly, and for the reasons set forth below, Plaintiff Ryan Costello respectfully requests that this Court deny Defendants' motion to dismiss.

## ARGUMENT

### I. PLAINTIFF'S CLAIMS ARE NOT PREEMPTED BY THE NLRA.

The scope of National Labor Relations Act (NLRA) preemption is narrow. The NLRA itself "contains no express preemption provision." Bldg. and Const. Trade Council of Metropolitan Dist. v. Assoc. Builders and Contractors of Massachusetts/ Rhode Island, Inc., 507 U.S. 218, 224 (1993). State statutes may only be preempted by the NLRA if they "conflict[] with federal law or would frustrate the federal scheme" or if the Court "discern[s] from the totality of the circumstances that Congress sought to occupy the field to the exclusion of the States." Id. As to the NLRA, the United States Supreme Court has been unequivocal about its reticence to find preemption: "We are

reluctant to infer pre-emption." Id.  Preemption analysis always begins, therefore, with the "'basic assumption that Congress did not intend to displace state law.'" Id. (quoting Maryland v. Louisiana, 451 U.S. 725, 746 (1981)).

The Supreme Court has also been clear that "pre-emption should not be lightly inferred in [the employment] area, since the establishment of labor standards falls within the traditional police power of the State." Fort Halifax Packing Co. v. Coyne, 481 U.S. 1, 21 (1987) (quoted in Rhode Island Hosp. Ass'n v. City of Providence ex rel. Lombardi, 667 F.3d 17, 33 (1st Cir. 2011)).  Specifically, "'States possess broad authority under their police powers to regulate the employment relationship to protect workers within the State.'" Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 749 (1985) (quoting DeCanas v. Bica, 424 U.S. 351, 356 (1976)).  "Thus, the Supreme Court recognized that Congress did not intend to preempt all local regulations that touch or concern the employment relationship." Paige v. Henry J. Kaiser Co., 826 F.2d 857, 864 (9th Cir. 1987).

"When a state law establishes a minimal employment standard not inconsistent with the general legislative goals of the NLRA, it conflicts with none of the purposes of the Act." Metropolitan Life, 471 U.S. at 757.  The fact that a right protected by state law may also be the subject of collective bargaining, for example, does not mean that the state law is preempted.  Rhode Island Hosp. Ass'n, 667 F.3d at 32 ("'[T]he mere fact that a state statute pertains to matter over which the parties are free to bargain cannot support a claim of pre-emption.").  Additionally, "[m]inimum state labor standards [that] affect union and non-union employees equally, and neither encourage nor

3

discourage the collective-bargaining processes that are the subject of the NLRA" are not preempted. Metropolitan Life, 471 U.S. at 755.

There are two distinct preemption principles applicable under the NLRA: Garmon preemption and Machinists preemption. The Garmon doctrine "holds that 'States may not regulate activity that the NLRA protects, prohibits, or arguably protects or prohibits." Rhode Island Hosp. Ass'n, 667 F.3d at 26 (quoting Wis. Dep't of Indus., Labor & Human Relations v. Gould Inc., 475 U.S. 282, 286, 106 S.Ct. 1057, 89 L.Ed.2d 223 (1986)). Under Garmon, "[t]he burden is on the 'party asserting pre-emption' to make an 'affirmative showing that the activity is arguably subject to the Act.'" Rhode Island Hosp. Ass'n, 667 F.3d at 36.

Even if a claim is "arguably subject" to the NLRA, however, preemption under Garmon is not always required. Instead, "when a matter is 'a merely peripheral concern of the [NLRA],'" it is not preempted. Id. Additionally, "'where the regulated conduct touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act,' the state law is not pre-empted." Id.

Machinists preemption affects "state law and state causes of action concerning conduct that Congress intended to be unregulated." Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 749 (1985). The theory behind Machinists preemption is that "Congress affirmatively wanted certain aspects of labor relations 'to be controlled [only] by the free play of economic forces.'" Beckwith v. United Parcel Serv., Inc., 889

4

F.2d 344, 346-47 (1st Cir. 1989). Here, Defendants do not argue that <u>Machinists</u> preemption applies. Plaintiff will therefore focus on <u>Garmon</u> preemption.[2]

In considering whether or not a claim is preempted, courts focus on the pleadings in the complaint. In other words, if a plaintiff does not allege a violation of the NLRA in his complaint, then NLRA preemption should not apply. As the Ninth Circuit held in <u>Paige v. Henry J. Kaiser Co.</u>: "Appellants, as masters of their complaint, did not allege a violation of their rights under the NLRA, but only violations of state statutes and policy. By foregoing their claim based on federal law, the appellants may choose to plead their action as a state claim. . . . <u>Garmon</u> analysis is therefore not relevant to this case." 826 F.2d 857, 862 (9th Cir. 1987). The Second Circuit has reached the same conclusion. <u>Domnister v. Exclusive Ambulette, Inc.</u>, 607 F.3d 84, 90 (2d Cir. 2010) ("As 'masters of the complaint,' plaintiffs were entitled to construct their complaint in this fashion, regardless of the existence of collective agreements. Thus the complaint, as written, is not preempted by either the LMRA or the NLRA, and the District Court lacked removal jurisdiction based on preemption."); see also <u>Raya v. Maryatt Indus. Corp.</u>, 940 F.2d 1535 (9th Cir. 1991) ("where a plaintiff, as master of his

---

[2] Briefly, Plaintiff notes that <u>Machinists</u> preemption is patently inapplicable here. There is no indication that Congress intended the employment relationship to be unregulated in connection with the termination of employees exercising their statutory and contractual rights. Instead, the contrary is true. Moreover, and as discussed in more detail below, applying <u>Machinists</u> preemption here would conflict directly with the Supreme Court's admonition that "pre-emption should not be lightly inferred in [the employment] area, since the establishment of labor standards falls within the traditional police power of the State." <u>Fort Halifax</u>, 481 U.S. at 21.

5

or her complaint, alleged only state law violations, the complaint did not threaten NLRB jurisdiction").

Additionally, courts have repeatedly held that claims relating to state wage rights and/or state law protections against wrongful termination are not preempted by the NLRA. The First Circuit has held that state law claims regulating the circumstances under which an employee may be discharged are not preempted by the NLRA. Specifically, noting that "it is not uncommon for states to limit discharge of employees to preclude retaliation for protected activities as a ground for discharge," the First Circuit held in Rhode Island Hosp. Ass'n, "[b]ecause the NLRA does not itself protect an employer's ability to hire or fire, and indeed regulates it, such conduct is not arguably protected or arguably prohibited" by the NLRA, and state statutes regulating such conduct are therefore not preempted. 667 F.3d at 35-36. Similarly, in Peabody Galion v. Dollar, the Tenth Circuit held that a state law claim for termination in retaliation for filing a worker's compensation claim is not preempted by the NLRA. 666 F.2d 1309, 1316 (10th Cir. 1981).

Numerous other courts have reached similar conclusions. See, e.g., Lontz v. Tharp, 413 F.3d 435 (4th Cir. 2005) (claims under West Virginia law for wrongful and constructive discharge not completely preempted by NLRA); Veal v. Kerr-McGee Coal Corp., 682 F. Supp. 957, 962 (S.D. Ill. 1988), aff'd, 885 F.2d 873 (7th Cir. 1989) (no NLRA preemption because "[t]he conduct at issue here is firing an employee for filing a compensation claim, which clearly is only arguably a peripheral concern of the Act" and "touches on interests deeply rooted in local responsibility"); Cardenas v. U.P.S.,

6

Inc., WL 5116343, at *5 (C.D. Cal. Dec. 9, 2010) (FLSA and California state law claims for retaliatory discharge not preempted by NLRA); cf. Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 408 (1988) (state law claim for retaliatory discharge not preempted by NLRA because it was not "inextricably intertwined" with collective bargaining agreement).

So too do courts routinely hold that claims relating to employees' wages and compensation are not preempted by the NLRA. The First Circuit held in Beckwith v. United Parcel Service, Inc. that a Maine law relating to employer use of payroll deductions "is not subject to the regulatory jurisdiction of the NLRB." 889 F.2d 344, 347 (1st Cir. 1989); see also, e.g., Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 21-23 (1987) (Maine law requiring severance payments not preempted by NLRA "since its establishment of a minimum labor standard does not impermissibly intrude upon the collective-bargaining process"); Dillingham Const. N.A., Inc. v. Cty. of Sonoma, 190 F.3d 1034, 1037 (9th Cir. 1999) ("The apprentice prevailing wage law at issue in this case does not fall under either preemption category and is not preempted by the NLRA.").

Here, Costello alleges that the termination of his employment is in violation of the anti-retaliation provisions in the Massachusetts Wage Act and the Massachusetts Minimum Wage Act and related common law provisions. Specifically, he claims that he was advocating for an increase in their wages due to some changes in working conditions and was fired for that reason. See Compl. ¶¶ 2, 15, 26. Costello is not alleging in this case that he was fired for engaging in concerted activity under the

7

NLRA[3]; instead, he is alleging that he was fired for complaining about wages. This claim falls squarely within the province of the state and does not implicate the NLRA.

For several reasons, therefore—and mindful of the "basic assumption that Congress did not intend to displace state law," Bldg. and Const. Trade Council of Metropolitan Dist., Inc., 507 U.S. at 224—this Court should hold that Costello's claims are not preempted by the NLRA. First, the claims in Costello's complaint are not covered by the NLRA. The NLRA provides that employers may not interfere with employees' rights to self-organize and/or engage in concerted activity. See 29 U.S.C. §§ 157, 158. The NLRA does not provide that employers may not fire employees for complaining about wages or advocating for higher wages. As the First Circuit held in Rhode Island Hosp. Ass'n, an employer's authority to hire and fire employees is not protected by the NLRA, and state laws such as those at issue here are not preempted by it. See 667 F.3d at 35-36. As such, Garmon preemption simply does not apply here.

Second, because the claims at issue here involve the regulation of employees' wages and discharge for asserting those rights, they are "within the traditional police power of the State." Fort Halifax, 481 U.S. at 21. Under clear Supreme Court precedent, this Court should hold that Congress did not intend to preempt these laws and, therefore, NLRA preemption is inapplicable. Additionally, there is nothing about Costello's claims that is "inconsistent with the general legislative goals of the NLRA,"

---

[3] The fact that Costello has separately filed charges with the NLRB is of no moment. Parties may pursue multiple alternative remedies.

8

and they therefore "conflict[] with none of the purposes of the Act," Metropolitan Life, 471 U.S. at 757, which is another basis for holding that the claims are not preempted.

Third, as the Ninth Circuit and Second Circuit have held, the fact that the Plaintiff has not invoked the NLRA is—without more—sufficient basis to hold that his claims are not preempted. Plaintiff is master of his complaint, and he has pleaded state law claims. NLRA preemption is simply not implicated.

Fourth, even if the Court were to hold that Garmon preemption applies, the claims in this case fall squarely within the exceptions to Garmon preemption enunciated by the First Circuit. Indeed, both of the exceptions from Rhode Island Hosp. Ass'n apply here. First, at most, the issue of retaliatory discharge for asserting rights under state wage laws is a "peripheral concern" of the NLRA. Rhode Island Hosp. Ass'n, 667 F.3d at 36. Second, protecting employees' rights under the Massachusetts wage laws is "deeply rooted in local feeling and responsibility." Id. As the Massachusetts Supreme Judicial Court has often repeated, the Massachusetts wage laws provide broad statutory protection to employees' entitlement to wages, and Massachusetts has a strong public policy interest in protecting those rights. See Crocker v. Townsend Oil Co., 464 Mass. 1, 13 (2012) ("We have consistently held that the legislative purpose behind the Wage Act . . . is to provide strong statutory protection for employees and their right to wages."). The application of these exceptions to Garmon preemption provides yet another basis to hold that the NLRA does not preempt Costello's claims.

9

The case on which Defendants primarily rely, <u>Chaulk Servs., Inc. v. Massachusetts Comm'n Against Discrimination</u>, 70 F.3d 1361 (1st Cir. 1995), is inapposite for two reasons. First, since that decision, the First Circuit has issued its decision in <u>Rhode Island Hosp. Ass'n</u>, which explicitly held that state laws relating to retaliatory discharge—such as those at issue here—are not preempted by the NLRA. 667 F.3d at 35-36. This more recent First Circuit precedent confirms that Costello's claims are not preempted. Second, <u>Chaulk</u> is distinguishable in any event. The First Circuit's decision there was based on the fact that, "in order to determine the merits of Doulamis' claims of sex discrimination, the MCAD will have to decide whether in fact Doulamis was engaged in protected union activity." 70 F.3d at 1367. Because that inquiry would require the MCAD to "become embroiled in a factual and legal determination of what constitutes union activity, a task which has been expressly reserved to the jurisdiction of the NLRB," the claim was preempted. <u>Id</u>. Here, in contrast, the issue of whether or not Costello engaged in concerted activity is not before the Court—the only question here is whether Costello's employment was terminated for asserting his rights under the Massachusetts wage laws. No aspect of the NLRA is implicated by this claim.

This case implicates issues of concern to Massachusetts and issues which Congress has recognized that Massachusetts can and should regulate. For all of the reasons set forth above and in keeping with the Supreme Court's "reluctan[ce] to infer

pre-emption," Bldg. and Const. Trade Council of Metropolitan Dist., 507 U.S. at 224, this Court should hold that Plaintiff's claims are not preempted by the NLRA.

## II. PLAINTIFF MAY PURSUE HIS CLAIMS UNDER THE MASSACHUSETTS MINIMUM WAGE ACT AND THE MASSACHUSETTS WAGE ACT.

The anti-retaliation provisions of the Massachusetts Minimum Wage Act and the Massachusetts Wage Act prohibit employers from taking adverse action against employees for asserting their rights under those chapters. M.G.L. c. 149, § 148A; M.G.L. c. 151, § 19. In order for an employee's complaint about wages to qualify as protected activity, the employee must "reasonably believe[] that the wages he or she has been paid violate such laws." Smith v. Winter Place LLC, 447 Mass. 363, 367 (2006). As the Massachusetts Appeals Court has noted, "an employee who, in good faith, makes an informal oral or written complaint to an employer, respecting a reasonably perceived unlawful practice by the employer, in failing to pay timely earned wages, advances a legislative policy to encourage private enforcement of the wage laws." Fraelick v. PerkettPR, Inc., 83 Mass. App. Ct. 698, 705 n.7 (2013). "In order to maintain an actionable claim under § 148A,[4] a plaintiff is not obliged to successfully prove her right to seek recovery of the untimely paid 'wages' in question. It is enough that a plaintiff,

---

[4] The same theory should apply under the Minimum Wage Law's anti-retaliation provision as well. Cf. Abramian v. President & Fellows of Harvard College, 432 Mass. 107, 121 (2000) ("To succeed on a claim of retaliation, 'the plaintiff must prove that [he] reasonably and in good faith believed that the [employer] was engaged in wrongful discrimination, that [he] acted reasonably in response to [his] belief, and that the [employer's] desire to retaliate against [him] was a determinative factor in its decision to terminate [his] employment.'").

11

as here, reasonably believed the remuneration in question fell within the scope of the Wage Act." Id. at 706.

Costello has a reasonable and good faith belief that the conduct about which he complained was in violation of both the Massachusetts Minimum Wage Act and the Massachusetts Wage Act. First, though Defendants assert that Costello's claim under the Minimum Wage Act is not viable because he alleges in the complaint that he was paid more than the Massachusetts minimum wage, that argument misunderstands the scope of the Minimum Wage Act and Costello's claim thereunder.

The Minimum Wage Act does not simply say that an employer must pay more than the minimum wage. It states that it is "against public policy for any employer to employ any person in an occupation in this commonwealth at an oppressive and unreasonable wage." M.G.L. c. 151, § 1. Moreover, the Legislature has defined "[a]n oppressive and unreasonable wage" as "a wage which is both less than the fair and reasonable value of the services rendered and less than sufficient to meet the minimum cost of living necessary for health." M.G.L. c. 151, § 2. Costello asserted that the wage that he and his co-workers were being paid was "oppressive and unreasonable" under the Minimum Wage Act. As explained in the complaint, Costello sought a wage increase because he and his co-workers "believed their hourly wages to be oppressive and unreasonable and because they were not being paid all wages earned by them, given the significant extra work that they were doing without any additional compensation." Compl. ¶ 15.

The Minimum Wage Act's anti-retaliation provision prohibits employers from "discharging . . . any employee . . . because such employee has complained of a violation of the provisions of this chapter." M.G.L. c. 151, § 19. In complaining that the wages paid by Defendants did not adequately compensate the workers for the scope of work they performed, Costello "complained of a violation" of the Minimum Wage Act, namely the payment of "an oppressive and unreasonable wage." Taking his allegations as true (as required on a motion to dismiss), Costello's complaint was unquestionably reasonable and in good faith. Accordingly, he has stated a claim under the Massachusetts Minimum Wage Act.

Similarly, the Massachusetts Wage Act requires that employees be paid all "wages earned" by them. M.G.L. c. 149, § 148. The anti-retaliation provision prohibits employers from "penaliz[ing]" an employee "in any way as a result of any action on the part of the employee to seek his or her rights" and/or for discharging an employee for making a complaint under the Wage Act. M.G.L. c. 149, § 148A. The word "earn" is defined, *inter alia*, as "'to receive as equitable return for work done or services received.'" Rogers v. Town of Plainville, 1999 Mass. App. Div. 210, 1999 WL 788427, at *4 (Aug. 31, 1999) (quoting Webster's Third New International Dictionary (1993)). Taking the allegations in the complaint as true, Costello had a reasonable and good faith belief that he and his co-workers were not receiving all wages earned by them. See, e.g., Compl. ¶ 15. As such, he has made out a viable claim under the Massachusetts Wage Act.

The complaint also makes out a wage law claim against Wanda Hernandez. The Minimum Wage Act's anti-retaliation provision applies to actions by "[a]ny employer and his agent, or the officer or agent of any corporation." M.G.L. c. 151, § 19. The complaint alleges that Hernandez is the general manager of the Whole Foods store at which Costello worked, that she had responsibility for overseeing employees and setting employees' pay rates, and that she was involved in the decision to terminate his employment. See Compl. ¶ 6. These allegations suffice to establish that she is an "agent" of Whole Foods for purposes of this claim.

Similarly, the Wage Act states that "any officers or agents having the management of such corporation shall be deemed to be the employers of the employees of the corporation." M.G.L. c. 149, § 148. On its face, the complaint alleges that Hernandez is an agent with managerial authority, and she is therefore a proper defendant under the Wage Act. See Compl. ¶ 6. The Massachusetts Supreme Judicial Court, moreover, has held that a manager or other officer or agent of an entity may be liable under the Wage Act if they "control policies and practices relating to the timely payment of employees." Cook v. Patient Edu, LLC, 465 Mass. 548, 554 (2013).

The cases cited by Defendants do not dictate another result as to Hernandez. First, in Wiedmann v. The Bradford Group, Inc., the SJC considered whether an individual manager had liability for an unpaid wages claim under the Wage Act. 444 Mass. 698 (2005). That case is distinguishable because the claim here is for retaliatory discharge, not a wage violation, so the question is who was involved in the discharge, not who was involved in the corporate decision to set pay rates. As such, the question

here is whether Hernandez was someone who "control[led], direct[ed], and participate[d] to a substantial degree" *in deciding whether to terminate Costello's employment*. Id. at 711. The Complaint alleges that she did, see, e.g., Compl. ¶ 6, and therefore sufficiently makes out a claim against her under the Wage Act.

Wiedmann is also distinguishable here as it was decided on a fully developed summary judgment record, not at the motion to dismiss stage. 444 Mass. 698 (2005). Moreover, this holding in Wiedmann is inapplicable under the Minimum Wage Act's anti-retaliation provision in any event, which specifically authorizes claims against employer's "agent[s]," such as Hernandez. M.G.L. c. 151, § 19. The other case cited by Defendants, Robinson v. Spencer Stuart, Inc., 2013 WL 3989672 (D. Mass. Aug. 5, 2013), is similarly distinguishable both because it concerns individual liability for wage claims, not retaliation claims, and because it also does not involve claims under M.G.L. c. 151, § 19.

Plaintiff's complaint clearly alleges that he reasonably believed that Defendants were violating the wage laws, that he engaged in protected conduct by challenging those perceived violations, and that Defendants terminated his employment because of that protected conduct. As such, he has pleaded claims under the anti-retaliation provisions of the Massachusetts Minimum Wage Act and the Massachusetts Wage Act as to both Defendants.

### III. PLAINTIFF HAS SUFFICIENTLY PLEADED A CLAIM FOR BREACH OF CONTRACT.

Plaintiff asserts that Defendants have violated their contractual obligations both by operating in a manner inconsistent with their own policy manual and by failing to abide by the law in their treatment of him. Specifically, the Complaint alleges that Defendants purportedly relied on a provision of the General Information Guide (GIG) in terminating him but that that provision of the GIG does not support his termination. Compl. ¶¶ 22-25. Moreover, Costello alleges that Defendants in fact terminated him for engaging in actions supported and encouraged by the GIG. Compl. ¶¶ 27-41.

Contrary to Defendants' argument, Costello has sufficiently alleged a breach of contract claim. Defendants argue that the GIG is not an employment contract and that the claim should be dismissed for that reason. Defendants' argument fails for two reasons. First, there is, at minimum, a dispute of fact as to whether the Defendants must be bound by their own promises in the GIG. As one Court in this District has noted, the Supreme Judicial Court has "clarified that there is no magic recipe of "conditions that must exist in order to justify a ruling that the terms of a personnel manual are part of an express or implied employment contract." Grant v. Target Corp., 126 F. Supp. 3d 183, 188 (D. Mass. 2015) (quoting O'Brien v. New England Tel. & Tel. Co., 422 Mass. 686, 692 (1996)). In Grant, therefore, the Court denied the defendant's motion to dismiss because "the parties have not yet explored the material facts surrounding" the enforceability of the employee handbook. Id. at 189. Notably, courts have been clear that employees are "not required to explicitly detail such facts" in a

complaint but that, instead, the enforceability of an employee handbook as a contract is an issue to be developed during discovery. See Beebe v. Williams College, 430 F. Supp. 2d 18, 23 (D. Mass. 2006) (denying motion to dismiss on claim that employee handbook created implied or expressed employment contract).

Similarly, here, further factual development is required on this issue. Significantly, Costello's claim here is not simply that he had a right to continued employment as a general matter under the GIG. Instead, Costello alleges that Defendants breached contractual obligations by claiming that they were terminating Costello for a violation of a particular provision of the GIG when in fact his actions did not violation that provision and, moreover, were permitted and encouraged by the GIG. Compl. ¶¶ 22-41. Defendants themselves brought the GIG into issue in this case by purporting to rely on it to support Costello's termination. As such, this case differs markedly from the other cases cited by Defendants relating to employee handbooks.

Additionally, even if the GIG were not itself an enforceable contract, it is well settled that employers are contractually obligated to abide by employment laws. See, e.g., Gasior v. Massachusetts General Hosp., 446 Mass. 645, 650 (2006) ("[W]e have no difficulty in concluding that an at-will employment relationship contains implied terms, the breach of which is actionable," and which include abiding by employment-related laws. This applies to the claims asserted by Costello here. As a Court in this District recently held, "[t]ermination of employment as an act of retaliation in violation of Mass. Gen. Laws ch. 149, § 148A would . . . likely be 'contrary to a well-defined public policy.'" Robert Reiser & Co. v. Scriven, 130 F. Supp. 3d 488, 497 (D. Mass. 2015). Any

actions by either Defendant in this matter in violation of this public policy are actionable as breaches of contract.

## IV.     PLAINTIFF HAS SUFFICIENTLY PLEADED A CLAIM FOR BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING.

Defendants first argue that this claim cannot survive because Costello has not alleged a breach of contract. As discussed in Section III, supra, Costello's complaint does sufficiently plead a claim for breach of contract however. Second, Defendants' argument that the allegations as to this claim are not specific enough must fail because it is contrary to the well-established notice pleading requirements. Costello has alleged that Defendants' actions contravened the GIG and promises made to Defendants' employees, that the termination was without good cause and in bad faith, and that the termination had the purpose of depriving Costello of benefits to which he is entitled." Compl. ¶¶ 41-43. This more than satisfies the requirement in the Federal Rules of Civil Procedures for a "short plan statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

## CONCLUSION

For the foregoing reasons, Defendants' motion should be dismissed in its entirety.

Respectfully submitted,

RYAN COSTELLO,

By his attorneys,

 /s/ Hillary Schwab
Hillary Schwab, BBO #666029
Rachel J. Smit, BBO #688294
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
(617) 607-3260
Fax: (617) 488-2261
Email: hillary@fairworklaw.com;
rachel@fairworklaw.com

Dated: May 20, 2016

## CERTIFICATE OF SERVICE

I hereby certify that, on May 20, 2016, this document was served by electronic filing on all counsel of record.

                                                          /s/ Hillary Schwab
                                                          Hillary Schwab, Esq.