UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 16-10673-GAO

RYAN COSTELLO,
Plaintiff,

v.

WHOLE FOODS MARKET GROUP, INC. and WANDA HERNANDEZ,
Defendants.

OPINION AND ORDER
August 8, 2016

O'TOOLE, D.J.

The complaint in this action alleges the following:

Ryan Costello worked at a Whole Foods Market in Jamaica Plain, Massachusetts, from approximately June 2014 to October 2015. He began there as a part-time employee making $10 an hour. At the time of the relevant events, he was employed full-time, being paid $13.54 an hour. He worked as part of a team in the "prepared foods" department of the market.

Whole Foods installed a burrito bar and a pizza station in September 2015. These two new stations added more responsibilities for the members of the prepared food team, and Costello believed that he and his coworkers deserved to be paid an additional $1 an hour as compensation for the additional work. He drafted a petition that requested a $1 per hour raise for his entire team. He distributed this petition to a number of his coworkers who, along with the plaintiff himself, signed it. The plaintiff and his coworkers presented the petition to their managers and posted it on an employee bulletin board.

Five days after submitting the petition, Costello was called into a meeting with a regional executive coordinator for Whole Foods and Wanda Hernandez, the general manager of the Jamaica

Plain Whole Foods store. Costello was told he was being investigated for statements that he purportedly made while soliciting signatures for the petition. It was claimed that another employee had complained that Costello had been soliciting signatures "while on the clock." A week later, Costello's employment was terminated for "lying during an investigation."

Costello alleges that he did not lie during the investigation, but rather was fired for his activity in seeking higher wages. His complaint, originally filed in Suffolk Superior Court, asserts four causes of action. Count I claims that he was fired in retaliation for raising complaints about an "oppressive and unreasonable wage" in violation of the Massachusetts Minimum Fair Wage Law. See M.G.L. ch. 151, §§ 1, 19. Count II claims that he was fired in retaliation for raising complaints about the defendants' failure to have paid him wages earned in violation of the Massachusetts Wage Act. See M.G.L. ch. 149, § 148A. Counts III and IV allege breach of contract and breach of the implied contractual covenant of good faith and fair dealing. All four claims are asserted against both Whole Foods and Hernandez individually. The complaint seeks damages for lost wages and emotional distress, subject to statutory trebling, as well as attorneys' fees and costs.

The defendants removed the case to this Court, invoking diversity of citizenship as the basis for jurisdiction. See 28 U.S.C. § 1332. Whole Foods is a Delaware corporation with its principal place of business in Texas. Both Costello and Hernandez are Massachusetts citizens, a circumstance that would ordinarily preclude diversity jurisdiction, but Whole Foods asserts that Hernandez was fraudulently joined for the purpose of defeating federal jurisdiction and therefore should be disregarded in assessing whether the conditions for jurisdiction under § 1332 are met.

There are two pending motions. The defendants have moved to dismiss the complaint for failure to state a claim upon which relief can be granted. See Fed. R. Civ. Pro. 12(b)(6). The plaintiff has moved to remand the case to the state court, arguing both the absence of complete

diversity and the insufficiency of the damages in light of the statutory amount-in-controversy threshold.

## I.      Jurisdiction

### A.      Fraudulent Joinder

Whether the necessary complete diversity of citizenship exists turns on whether Hernandez has been fraudulently joined to defeat jurisdiction under § 1332.

> [I]t is generally recognized that, under the doctrine of fraudulent joinder, removal is not defeated by the joinder of a non-diverse defendant where there is no reasonable possibility that the state's highest court would find that the complaint states a cause of action upon which relief may be granted against the non-diverse defendant.

Universal Truck & Equip. Co. v. Southworth-Milton, Inc., 765 F.3d 103, 108 (1st Cir. 2014). Thus, determining whether the parties are diverse is similar to an evaluation of the merits of the plaintiff's claims against the pertinent defendant. See, e.g., id. at 108 n.3 (citing Poulos v. Naas Foods, Inc., 959 F.2d 69, 73 (7th Cir.1992) ("[T]he federal court must engage in an act of prediction: is there any reasonable possibility that a state court would rule against the non-diverse defendant?") (alteration in original)); Polyplastics, Inc. v. Transconex, Inc., 713 F.2d 875, 877 (1st Cir. 1983) ("[A] finding of fraudulent joinder bears an implicit finding that the plaintiff has failed to state a cause of action against the fraudulently joined defendant . . . .").

As noted above, Counts I and II are both claims for retaliation. Costello alleges that Whole Foods and Hernandez fired him in retaliation for his complaining about rights protected by the Massachusetts Minimum Fair Wage Law ("MFWL") and the Massachusetts Wage Act. Counts III and IV are common law based contract claims.

### 1. *Minimum Fair Wage Law*

The defendants argue that the Minimum Fair Wage Law has nothing to do with the plaintiff's grievance. At all times during his employment, Costello was earning equal to or more than $10 per hour. During his employment at Whole Foods, the statutory minimum wage was first $8 (in 2014) and then $9 (in 2015). See M.G.L. ch. 151, § 1. Alternative minimum wages for specific industries may be set by the Director of the Department of Labor Standards, see id. § 7, but there is no allegation that any such rate was applicable to Costello.

Instead, the plaintiff argues that in addition to setting a minimum wage, the statute also forbids payment of an "oppressive and unreasonable wage." Id. § 1. An "oppressive and unreasonable wage" is broadly defined by statute to be "a wage which is both less than the fair and reasonable value of the services rendered and less than sufficient to meet the minimum cost of living necessary for health." Id. § 2.

The plaintiff's theory is that a wage rate higher than the established minimum wage may nonetheless be "oppressive and unreasonable" in particular circumstances. It appears to be an entirely novel theory. Indeed, the plaintiff has provided no case at all in which an employee's higher than minimum wage salary was found nonetheless to violate the Minimum Fair Wage Law. Courts in previous cases have analyzed the viability of claims under the MFWL by referencing only the statutory minimum wage. See, e.g., Huston v. FLS Language Ctrs., 18 F. Supp. 3d 17, 23–24 (D. Mass. 2014); Dagan v. Jewish Cmty. Hous. for the Elderly, 699 N.E.2d 840, 847 (Mass. App. Ct. 1998).

It appears 'twas always thus, as an early case concerning the MFWL from the Supreme Judicial Court shows. In Robinson v. Pine Grove Cemetery Corp., the employee, Ray Wilday, was, from 1947 to 1950, paid an annual salary of $1,200 at the rate of $100 per month. 162 N.E.2d 16,

17 (Mass. 1959). The MFWL had been first passed in 1947, and then, like now, "declared it to be against public policy to employ any person in an occupation at an oppressive and unreasonable wage." See id. Then, like now, specific rates could be set by statute or by the appropriate administrator.[1] However, unlike now, from the initial date of passage of the act until January 1, 1950, there was no general minimum wage rate established. Rather, wage boards recommended various minimum wages for particular industries. No minimum wage had been recommended for Wilday's occupation. At the start of 1950, the first generally applicable minimum wage of sixty-five cents per hour came into effect. On these facts, the Supreme Judicial Court concluded that because "[t]here was therefore no minimum fair wage established respecting Wilday's occupation prior to January 1, 1950," the requested ruling in favor of the defendant employer for that period should have been granted. Id.

So it appears that from the very beginning, the MFWL has been interpreted to enforce the minimum wage standards that are statutorily or administratively set, but not to permit ad hoc, case by case inquiries into what might be "oppressive and unreasonable" in varying circumstances. The fact that a wage is not below any established minimum is conclusive that the wage is also not "oppressive and unreasonable." See id. Thus, Costello's wage at Whole Foods—always at or above the established minimum wage—could never have violated the MFWL.[2]

The plaintiff's claim is for retaliation, not for a direct violation of the minimum wage standard. But to succeed on a retaliation claim, the plaintiff must be able to prove that he "reasonably and in good faith believed the employer was engaged in wrongful discrimination, and

---

[1] Then the commissioner of labor and industries, Robinson, 162 N.E 2d at 17, now the director of the department of labor standards, M.G.L. ch. 151, § 2, 7.

[2] Costello does not claim that he was denied overtime pay, another right protected by the act. See M.G.L. ch. 151, §§ 1A, 1B.

that the employer's desire to retaliate against him was a determinative factor in its decision to terminate his employment." Smith v. Winter Place LLC, 851 N.E.2d 417, 419 n.4 (Mass. 2006) (analogizing employment discrimination retaliation to wage laws) (brackets, citation, and internal quotation marks omitted); see also Fraelick v. PerkettPR, Inc., 989 N.E.2d 517, 522–24 (Mass. App. Ct. 2013). Conceding to Costello that he made the claim in good faith, it cannot be said that he *reasonably* believed that the MFWL authorizes the free-floating assessment he proposes. In other words, given the way the law has been administered, it would not have been *reasonable* for him to believe that his employer violated the minimum wage law by not giving him a raise from an already above-minimum wage to an even higher wage. The MFWL has never been interpreted to do that.[3]

     *2. Wage Act*

The plaintiff's claim under the Wage Act faces a similar problem. The Wage Act provides that employers shall pay each employee "the wages *earned* by him." M.G.L. ch. 149, § 148 (emphasis added). "The basic purpose of the [Wage Act] is to prevent the unreasonable detention of wages." Weems v. Citigroup Inc., 900 N.E.2d 89, 92 (Mass. 2009) (citation and internal quotation mark omitted).

Like the MFWL, the Wage Act's command is simple and straightforward. When an employee has done the work and earned his wages, the employer is required to promptly pay him. The Wage Act does not give employees a right to demand payment for what they believe they *should* be paid. For example, for the payment of commissions, the Wage Act only applies when

---

[3] In their recent sur-reply brief, the defendants have attached an opinion letter from the General Counsel of the Department of Labor Standards, which similarly concludes that Costello has failed to state a claim for retaliation under the MFWL. (See Defs.' Sur-Reply in Further Opp'n to Pl.'s Mot. for Remand, Ex. A (dkt. no. 32-1).)

commissions are "arithmetically determinable". Id. Similarly, discretionary bonuses do not fall under the Act, because "employers are . . . under no obligation to award them." See id. at 94.

The plaintiff has provided no case that supports the notion that because an employee has exerted more effort than previously, he has thus (for purposes of the Act) "earned" (as in "deserves") greater pay.[4] The plaintiff's reading of the Wage Act, that it authorizes employees to sue employers in order to force wage increases (in recognition of the performance of additional duties), is not connected to its established purpose: to prevent the detention of wages due for previously completed work.

As with the MFWL, because the Wage Act in no way touches upon the plaintiff's desired goal (to receive a raise), he cannot have *reasonably* believed denying him a raise violated the Wage Act.[5]

### 3.  Contract Claims

The plaintiff briefly argues that the breach of contract claims—that is, Whole Foods had a contract with Costello that it breached by firing him for requesting a raise on behalf of himself and others—also applies to Hernandez. But he pleads no facts that plausibly suggest Hernandez contracted with him as an individual, rather than as an agent of Whole Foods. He argues that it is sometimes possible to bring common law claims against the agents of a corporate defendant, citing

---

[4] The plaintiff quotes out of context a definition for "earn" used in an unpublished decision from the Appellate Division of the Massachusetts District Court. See Rogers v. Town of Plainville, 1999 Mass. App. Div. 210, 1999 WL 788427, at *4 (Mass. App. Div. Aug. 31, 1999). There, the court was interpreting a vacation policy in a town's bylaws to determine when a town employee accrued vacation time, not the Wage Act. See id.

[5] Both the MFWL and the Wage Act have individual liability provisions that might otherwise make Hernandez liable for a violation of these statutes. See M.G.L. ch. 149, § 148 ("The president and treasurer of a corporation and any officers or agents having management of such corporation . . . ."); M.G.L. ch. 151, § 19 ("Any employer and his agent, or the officer or agent of any corporation who . . . ."). Because Costello's MFWL and Wage Act claims fail outright, reaching the issue of individual liability is unnecessary.

Lipsitt v. Plaud, 994 N.E.2d 777 (Mass. 2013). However, for that to be available, one must plausibly allege that this is one of those "rare situations [in which] to ignore corporate formalities, where such disregard is necessary to provide a meaningful remedy for injuries and to avoid injustice." See id. at 788–89 (citation omitted). There is nothing in the complaint that would support piercing Whole Foods' corporate veil and allowing these claims against Hernandez.

Because, under state law, none of the claims in the complaint show a "reasonable possibility" of succeeding against Hernandez, the doctrine of fraudulent joinder is properly invoked. She is disregarded for purposes of the diversity of citizenship assessment. There is complete diversity between the plaintiff and Whole Foods.

B.      Amount in Controversy

The plaintiff argues that the entire amount in controversy falls well below $75,000. The complaint itself contains no allegations about the range of possible damages. In any event, "the entire record . . . must be evaluated." Amoche v. Guarantee Trust Life Ins. Co., 556 F.3d 41, 51 (1st Cir. 2009).

Some calculations can be made. The time between Costello's termination on October 30, 2015, and the removal on April 8, 2016, was approximately twenty-four weeks. Multiplied by forty hours of full-time work and a wage of $13.54 per hour and then trebled,[6] Costello's lost wages for this period would be $38,995.20.

Contrary to the plaintiff's argument, the amount in controversy includes all back pay due from the day of wrongful termination through the date of final judgment. See Lucas v. Ultima Framingham LLC, 973 F. Supp. 2d 98, 102–03 (D. Mass. 2013); see also Hardemon v. City of

---

[6] Treble damages are mandatory under the Wage Act. See M.G.L. ch. 149 § 150. The damage multiplier must be included in the amount in controversy analysis. Huston, 18 F. Supp. 3d at 22.

Bos., 144 F.3d 24, 25–26, 28 (1st Cir. 1998). Hypothetically, each week that passed would add $1624.80 to the plaintiff's potential damages ($13.54 per hour times 40 hours per week then trebled). At that rate, the period from termination to final judgment would need to be just over 46 weeks (just under 11 months) to reach the required amount in controversy. To date—well before any final adjudication on the merits in favor of the plaintiff is likely to have occurred—it has already been over 40 weeks. As a practical matter there is no likelihood that this litigation would conclude (other than by settlement) before the 46 week mark is met and the threshold for jurisdictional purposes is crossed.

The plaintiff's position, that only damages already accrued by the date of removal should be considered, is incorrect. While the amount in controversy is evaluated on the basis of what is known about likely damages at the time of removal, the relevant question is, taking the facts known at removal, what amount in controversy is reasonably probable. See Amoche, 556 F.3d at 51. At removal, potential damages included treble back pay from termination through final judgment plus attorney's fees. Taken together, the defendants have shown that the potential damages could plausibly exceed $75,000.[7]

For all the foregoing reasons, the jurisdictional requirements of § 1332 are met and the case was properly removed.

---

[7] The plaintiff cites to another case in this District for the proposition that damages accruing after removal cannot be counted towards the jurisdictional minimum. See Arrigo v. Scholarship Storage, Inc., C.A. No. 10-11650-MLW, 2011 WL 3584715, at *5–6 (D. Mass. Aug. 10, 2011). However, Arrigo acknowledges, citing Hardemon, that "in wrongful termination cases, the First Circuit has included in the amount in controversy 'what the plaintiff would have earned but for the termination of his employment, even if those sums had not yet become due at the time of removal.'" Id. (citation omitted).

**II.**     **Failure to State a Claim**

A.     MFWL and Wage Act

For the claims under the MFWL and the Wage Act, the discussion above as to Hernandez is equally applicable to Whole Foods. The plaintiff's grievance does not fit within these statutes.

B.     Contract Claims

The breach of contract and covenant of good faith and fair dealing claims rely on the plaintiff's contention that Whole Foods' "General Information Guide" ("GIG") is an enforceable contract.

"A personnel manual may form the basis for an express contract." See O'Brien v. New Eng. Tel. & Tel. Co., 664 N.E.2d 843, 847 (Mass. 1996) (citing Jackson v. Action for Bos. Cmty. Dev., Inc., 525 N.E.2d 411, 414 (Mass. 1988)); see also id. ("Surely, if the parties agree in advance of employment that a personnel manual will set forth relative rights and obligations of employer and employee, the manual becomes part of the employment contract.").

There is little of the GIG actually before the Court. In the complaint, the plaintiff refers to page 58 of the GIG, alleging:

> 21. [The regional executive coordinator] and Hernandez informed Costello that he was being investigated for statements that he purportedly made while soliciting signatures for the petition. They claimed that another employee had approached them about the concern of solicitation of signatures while on the clock.
>
> 22. Defendants terminated Costello's employment on October 30, 2015. They claimed that he was being terminated for "lying during an investigation," and they cited and attached page 58 of the [GIG] as the basis for his termination.
>
> 23. Costello did not lie during the investigation, and the document terminating his employment contains several misstatements regarding what he said during the investigation.
>
> 24. Moreover, page 58 of the GIG does not support Costello's termination. The cited section, entitled "Team Member Investigation," relates to investigations of "conduct/behavior or other relevant circumstances, including reasonable suspicion,

> [which] raise legitimate questions concerning work performance, reliability, honesty, trustworthiness, or potential threat to the safety of co-workers or others."
>
> 25. Costello was not investigated for any of the conduct set forth on page 58 of the GIG but instead was purportedly investigated for soliciting signatures while on the clock.

(Compl. ¶¶ 21–25 (dkt. no. 1-1) (last alteration in original).)

The GIG also describes an "Open Door Communications Policy" that establishes that employees "have the right to speak with anyone in the company about [their] concerns." (Compl. ¶ 34.) The GIG also encourages "networking" among employees. (Compl. ¶ 33.) While the complaint asserts that the GIG "sets forth the company's policies and procedures," no specific procedures concerning termination are described. (Compl. ¶ 28.)

The defendants attach two additional pages of the GIG as an exhibit to their motion to dismiss, the authenticity of which is not contested by the plaintiff. (See Defs.' Mot. to Dismiss, Exs. D, E (dkt. nos. 8-4, 8-5).) As part of the GIG, they may be considered incorporated into the complaint by reference for the purposes of the motion to dismiss. See A.G. ex rel. Maddox v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013). Page 5 of the GIG states in bold, capital letters, in an offset box: "Your employment is at-will. This means that your employment is for no definite period of time, and either you or Whole Foods Market may terminate your employment at any time, with or without cause or notice." (Defs.' Mot. to Dismiss, Ex. D, at 3.) The rest of the page has similar statements to the effect that the GIG is not a contract.[8] The second page attached is the signature page for the GIG, signed by Costello. It also describes the at-will nature of the relationship. (See id., Ex. E, at 2 ("I acknowledge that I am employed at-will, which means that .

---

[8] This page also states that the GIG can be modified at any time without notice, another indicator courts have used to distinguish a mere manual from an employment contract. See O'Brien, 664 N.E.2d at 848.

. . either Whole Foods Market or I can terminate this relationship at any time, for any reason not prohibited by law, with or without cause or notice.").)

The plaintiff has not plausibly alleged that the GIG is a contract under Massachusetts law. In the face of the repeated, unambiguous disclaimers that the GIG did not form a binding contract, it would not be "objectively reasonable" for an employee to conclude otherwise. See Hinchey v. NYNEX Corp., 144 F.3d 134, 141 (1st Cir. 1998). The complaint further contains no factual allegations suggesting Whole Foods and its employees treated the GIG like a contract, such as by "adher[ing] to the procedures set forth in [the] manual." See O'Brien, 664 N.E.2d at 847.

The foundations for Costello's contractual claims—whether or not Costello was in fact fired for "violating" page 58 of the GIG and whether or not Costello's activity was covered by the spirit of the GIG's "Open Door Communications Policy"—are beside the point. There is no indication, through either words or conduct, that Whole Foods and its employees intended to be contractually bound by these statements. Nor are any facts pled to support that a reasonable person reading the GIG (or later through experience at Whole Foods) would believe these statements were meant to be enforceably binding. Merely describing policies does not create a binding contract. See Chilson v. Polo Ralph Lauren Retail Corp., 11 F. Supp. 2d 153, 156–57 (D. Mass. 1998) (concluding that an "Open Door Policy" in a personnel manual did not form an enforceable contract).

For these reasons, none of the claims asserted in the complaint are viable against either defendant, and the complaint should be dismissed for failure to state a claim upon which relief can be granted.[9]

---

[9] In addition to this lawsuit, Costello has filed charges with the National Labor Relations Board regarding the same underlying events. Whole Foods also argues that the National Labor Relations Act preempts the plaintiff's state law claims. See San Diego Bldg. Trades Council, Millmen's

**III.**     **Conclusion**

The plaintiff's Motion for Remand to State Court (dkt. no. 18) is DENIED. The defendants'

Motion to Dismiss Plaintiff's Complaint (dkt. no. 8) is GRANTED. This action is DISMISSED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge

---

Union, Local 2020 v. Garmon, 359 U.S. 236, 244 (1959). Costello argues that through this lawsuit he is seeking to vindicate his individual statutory and contractual rights, not rights related to concerted activity. This argument makes a fine point, but it has some support. See R.I. Hosp. Ass'n v. City of Providence ex rel. Lombardi, 667 F.3d 17, 35–36 & n.18 (1st Cir. 2011) (noting, among other situations, that courts have upheld retaliation statutes against NRLA preemption arguments). However, it is unnecessary to reach this issue because all claims against Whole Foods in this case are being dismissed on the merits.